**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PRO-LITE, INC.,<br>Plaintiff,<br>v.<br>GREEN LIGHT INNOVATIONS, INC,<br>Defendant. | Case No. 2:26-cv-03159-RGK-ADS<br>**STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |

Pursuant to Fed. R. Civ. P. 16 and Fed. R. Civ. P. 26(f), the Court adopts and enters the parties' Stipulated Order Regarding Discovery of Electronically Stored Information. The procedures and protocols outlined herein govern the production of Electronically Stored Information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules.

## I. COOPERATION

The parties are aware of the importance of cooperation and commit to cooperate in good faith throughout the matter consistent with the Federal Rules of Civil Procedure. The parties intend to promote, to the fullest extent possible, the resolution of disputes regarding the discovery of ESI without Court intervention. The parties do not, by entering into this stipulation, waive any privilege, work product protections, or other protections or objections in responding to discovery.

## II. LIAISON

The parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

## III. DEFINITIONS

a. "Action" means this pending federal law suit.

b. "Confidentiality Designation" means the legend affixed to Documents for Confidential and Highly Confidential—Attorneys Eyes Only discovery information as defined by, and subject to, the terms of the parties' Stipulated Protective Order.

c. "Disclosure or Discovery Material" means all items or information, regardless of the medium or manner in which it is generated, stored, or

maintained (including, among other things, testimony, transcripts, and tangible things), that are produced or generated in disclosures or responses to discovery in this matter.

d. "Document" has the meaning contemplated in the Federal Rules of Civil Procedure and includes, without limitation, all ESI. The term "Document" includes Hard Copy Documents, Electronic Documents, Electronic Records, and other forms of ESI.

e. "Duplicate ESI" or "Duplicate" means, for a stand-alone Document, that one Document is the exact duplicate of another stand-alone Document, or for an e-mail family, that one e-mail family is the exact duplicate of another e-mail family based on the stand-alone files' or the e-mail families' identical Hash Values.

f. "Electronic Document" or "Electronic Records" means Documents that are in electronic form at the time of collection.

g. "Electronically Stored Information" or "ESI" means electronically stored information, as that term is used in Federal Rule of Civil Procedure 34(a).

h. "Hard Copy Document" means a Document that is stored in paper form at the time of collection.

i. "Hash Value" is a number that uniquely identifies a file or specific data and that is calculated using a standard mathematical hashing algorithm whose input comprises characteristics of the respective file or data.

j. "Native Format" means the original format of ESI in which it was generated, used and/or normally kept by the Producing Party in the usual course of its business and in its regularly conducted activities. For example, the Native Format of an Excel workbook is an .xls or .xlsx file.

k. "Metadata" are information embedded in or associated with an Electronic Document that are generated automatically by the operation of a computer or other information technology system when the Document is created, modified, transmitted, deleted, or otherwise manipulated. The parties will not be required to manually populate any Metadata fields.

l. "Non-Party" means any natural person, partnership, corporation, association, or other legal entity not named as a Party to this Action.

m. "OCR" is an abbreviation for "optical character recognition" and references a process by which text contained within an Electronic Document in a non-searchable imaged format is converted to a searchable text format.

n. "Party" means any party to this Action, including all of its officers, directors, employees, consultants, retained experts, and outside counsel of record (and their support staffs).

o. "Producing Party" means a Party or Non-Party that produces Disclosure or Discovery Material in this Action.

p. "Receiving Party" means a Party that receives Disclosure or Discovery Material from a Producing Party in this Action.

## IV. PRESERVATION

The parties have discussed their preservation obligations and needs and agree that no special restrictions on the preservation of potentially relevant ESI are necessary to avoid undue burden or expense. Notwithstanding, the parties agree that the following ESI is not reasonably accessible and will not be specifically preserved:

a) Backup tapes and systems created for the sole purpose of disaster recovery;

b) Instant Messaging, except for instant messaging that has been logged in the ordinary course of business, if any;

c) Text messages on employees' personal phones;

d) Legacy Data (information stored in an old or obsolete format or computer system that is, therefore, difficult to access or process); and

e) Encrypted data/password protected files, where the key or password cannot be ascertained after reasonable efforts.

Nothing in this paragraph is intended to preclude a Party from requesting production of the above categories of ESI if it becomes apparent that relevant information is likely to be located in these sources and not otherwise available from reasonably accessible sources. In such a situation, the parties agree to confer and in good faith attempt to reach an agreement about the production of information located in the above categories of ESI. If the parties are unable to reach an agreement, the Requesting Party may seek an Order from the Court.

## V. TECHNOLOGY ASSISTED REVIEW

If a Producing Party wishes to use Technology Assisted Review ("TAR") to cull Documents from review and production, the Party shall first inform the other Party of such intent and shall indicate the general methodology (i.e., TAR1.0, TAR2.0/Continuous Active Learning (CAL), or Hybrid model) as well as a high-level overview of quality control and validation measures. To the extent the parties disagree over the use of TAR, the parties shall meet and confer and attempt in good faith to reach agreement on whether and how TAR will be used.

## VI. PRODUCTION FORMATS

The parties agree to produce all ESI as follows:

1. **All Records**.

a. Records shall be produced as Document level records unless otherwise maintained in the normal course of business. (Under no circumstances should multiple Electronic Documents or Hard Copy Documents be combined or scanned as a single record for production purposes.)

b. Embedded or compound Documents shall be extracted and produced as separate records.

c. Records shall be produced with sequential Bates numbers. All Documents must be assigned a Bates number that shall always: (1) be unique across the entire Document production, (2) maintain a constant length (zero/0-padded) across the entire production, (3) contain no special characters or spaces, and (4) be sequential within a given Document. All produced members of an email or compound edoc family shall be assigned sequential Bates numbers (parent first, then attachments). Bates numbers shall not obscure any portion of the original file.

d. Parent-child relationships (the association between an attachment and its parent Document or between embedded Documents and their parent) shall be preserved. If a Party does not produce a member of a family group on the grounds that it is non-responsive or privileged, then the Party will include a slip-sheet stating that the attachment is withheld as non-responsive or privileged. The parties may meet and confer to discuss requests to produce an attachment that has been slip-sheeted as non-responsive.

e. Electronic Records shall be processed in 12-hour format. Electronic Records shall be produced according to the time zone in which the Electronic Records originated from or adjusted to Coordinated Universal Time (UTC).

f. The full text content of all Electronic Records shall be produced as Document level .TXT files. If Hard Copy Documents are OCR'd by the Producing Party for their own use, OCR text should be produced for the Receiving Party. To the extent Documents have been redacted they may be re-OCR'd to exclude redacted text from production.

2. **De-duplication**. The Producing Party need only produce a single copy of responsive Duplicate ESI. However, no Document that is a member of an e-mail

family or is the parent or an attachment of a produced Document may individually be withheld from production as a Duplicate, and no stand-alone Document may be withheld as a Duplicate based on the presence of that stand-alone Document within an e-mail family. If a Producing Party de-duplicates Documents across its various productions, then the Producing Party shall provide the names of all original file locations of the Duplicates of a particular Document in the relevant load file. A Producing Party employing a de-duplication process certifies that its process is commercially acceptable. The Producing Party agrees that the presence of a custodian's name contained in "all custodians" or "other custodians" in the Metadata for a particular Document is evidence that a Duplicate of the Document was located in that custodian's file.

a. To the extent Global deduplication is utilized, the names of all custodians from whom a copy of an Electronic Record was collected should be captured and produced in the load file as specified in Exhibit A attached hereto.

b. De-duplication shall not break apart email or compound Document families.

3. **E-mail Threading**. The Parties may use industry standard "email thread suppression." As used in this protocol, email thread suppression means reducing duplicative production of email threads by producing only the most inclusive email containing the thread of emails, as well as all attachments within the thread. Duplicative emails suppressed under this paragraph need not be reflected on the Party's privilege log. If the most inclusive email in a thread is redacted in its entirety as privileged, but earlier emails in the thread are responsive and not privileged, then the unredacted portion of the thread must be produced.

4. **Container/Archive Files**. Records contained in email container or compressed archive files (.PST, .MBOX, .PSF, .ZIP, .7z, .RAR, etc.) should be extracted and produced as individual records as specified herein.

5. **Databases**. To the extent relevant, responsive information is contained in a database, the Producing Party shall identify any database(s) containing information relevant to discovery requests and advise the Requesting Party of available reporting options. The parties should then confer to decide what reports will be produced as well as a mutually agreeable production format.

6. **Spreadsheet and Audio/Visual Files**. The following file types should be produced in Native Format along with a slipsheet image reflecting the assigned Bates number and Confidentiality Designation (if any) of the Document:

a. Audio Files

b. Video Files

c. Spreadsheets (unless redaction is required, in which case they may be produced as redacted images).

d. Other file types that cannot be properly rendered to image format or as may be mutually agreed upon by the parties.

e. The file name of each natively produced Document shall include the Bates number assigned to that Document. The original file name of each natively produced Document shall be preserved.

7. **Hard Copy Documents**. Hard copy documents shall be scanned in black and white or color, consistent with the appearance of the original, at a resolution of 300 DPI and saved as single-page Group IV TIFF images to preserve the integrity and readability of the source material.

8. **All Other File Types**. All other files should be in image format unless otherwise agreed upon by the parties. Images should be produced as indicated below along with an Opticon (.OPT) load file reflecting the image keys, relative paths and proper unitization of the imaged pages:

a. Color pages shall be produced as JPEG (.JPG) images.

b. Black & White pages shall be produced as single page, Group IV 1 bit/ 300dpi TIFF (.TIF) images.

c. The file name of each imaged page shall be the Bates number assigned to the page.

d. The Requesting Party retains the right to request a TIFF image in a higher resolution or larger page size if necessary to render the image legible or reasonably usable.

9. **Metadata**. All records shall be accompanied by Concordance (.DAT) load file containing the fields set forth in Exhibit A.

10. **Redactions**. All images of redacted Documents that contain comments, deletions, revision marks (including the identity of the person making the deletion or revision and the date and time thereof), speaker notes, or other user-entered data that the source application can display to the user will be processed such that all data is visible in the image, to the extent it exists in "last saved" or "last modified" format.

a. For instances in which only a portion of a Document is redacted for privilege, the Party claiming the privilege will redact only the privileged portions and produce the remaining portions. The Party may, at its option, indicate the basis on the face of redaction.

b. Documents that are partially redacted for privilege and that indicate on their face the basis of the redaction on grounds of privilege need not be placed on a privilege log if (a) the Document's Metadata indicates the Document has been redacted for privilege and (b) the non-redacted portions provide sufficient context to identify and evaluate the basis of the claim of privilege.

c. The Receiving Party may request that the Producing Party provide an explanation of the basis of claim of privilege for specific redacted Documents and such request shall not be unreasonably denied.

d. The Producing Party's production of a text file or Metadata Load File containing information redacted from that Document shall not be deemed

a waiver of the privilege or other protection associated with that Document, and any Metadata or text file containing the text of redacted portions of a redacted Document or other privileged or protected information shall be treated as protected information, consistent with the terms of clawback provisions of the parties' Stipulated Protective Order.

11. **Hard-Copy Documents**. If the Parties elect to produce hard-copy documents in an electronic format, the DAT load file shall include fields reflecting document breaks and the custodian or data source associated with each produced document. Hard-copy documents will be scanned using Optical Character Recognition technology and searchable ASCII text files will be produced (or Unicode text format if the text is in a foreign language), unless the Producing Party can show that the cost would outweigh the usefulness of scanning (*e.g.*, when the condition of the paper is not conducive to scanning and will not result in accurate or reasonably useable/searchable ESI). Each file will be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the document).

12. **Production Problems**. If a Receiving Party believes that a Document, as produced, does not comply with the production format requirements herein, the Receiving Party may notify the Producing Party of the alleged non-compliance, and as necessary, the parties will promptly meet and confer regarding a reasonable resolution of any such production-format issue. If the Party identifying the issue can provide or identify samples (*i.e.*, Documents' Bates numbers) of an issue, it should do so.

## VII. THIRD PARTY ESI

A Party that issues a Non-Party subpoena (the "Issuing Party") shall include a copy of this Stipulation and the Stipulated Protective Order with the subpoena and request that third parties produce documents in accordance with the specifications set forth herein. The Issuing Party shall not be responsible for enforcing third-party compliance with this Stipulation and the Stipulated Protective Order. The Issuing

Party will be responsible for producing any documents obtained under a subpoena to all other parties. If the Issuing Party receives any hard-copy documents or Native Files, the Issuing Party will process the documents in accordance with the provisions of this Stipulation, and then produce the processed documents to all other parties. If the non-party production is not Bates-stamped, the Issuing Party will brand the Non-Party production images with prefixes unique to the Non-Party, Bates numbers, and any confidentiality designation prior to producing them to the other Parties prior to delivery to all other parties.

## VIII. DOCUMENTS PROTECTED FROM DISCOVERY

The production of ESI is subject to the Parties' rights under the Protective Order, the practices of the Court, and the rules to request the return of inadvertently produced ESI.

Documents and communications involving trial counsel that post-date the filing of the complaint need not be placed on a privilege log.

Nothing in this Protocol shall be interpreted to limit a Producing Party's right to conduct a review of Documents, including Metadata, for relevance, responsiveness, or segregation of privileged or protected information before production.

The terms of the Protective Order entered by the Court governing inadvertent production of privileged information, including under Federal Rule of Evidence 502(d), also govern all production pursuant to this ESI Order. The Parties acknowledge that regardless of the diligence of any Party, an inadvertent production of privileged or attorney work product documents may occur. If a Producing Party, through inadvertence, produces or provides discovery that it reasonably believes is privileged or otherwise immune from discovery, the Producing Party may claw back the protected Document by making a written request to the Receiving Party specifically identifying the protected Document, including the date, author, addressees, and topic of the Document, as well as a brief explanation substantiating

the claim of privilege. If these conditions are met, the Receiving Party shall destroy or return to the Producing Party such inadvertently produced materials and all copies thereof within five (5) calendar days of receipt of the written request. The inadvertent production of certain protected information does not constitute a waiver of confidentiality under the circumstances set forth in the Protective Order. Return of the materials shall not constitute an admission or concession, or permit any inference, that the returned materials are, in fact, properly subject to a claim of privilege or immunity from discovery. The provisions set forth in the Protective Order are incorporated herein in its entirety by this reference.

## IX. MODIFICATION

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown. Should any Party seek to modify this Order, the parties will meet and confer to resolve any dispute before seeking Court intervention.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: August 13, 2026

By:
**STINSON LLP**
Attorneys for Defendant and Counterclaimant Green Light Innovations, Inc.

By: */s/ B. Scott Eidson*

Dated: August 13, 2026

By:
**MANDOUR & ASSOCIATES, APC**
Attorneys for Plaintiff and Counter Defendant Pro-Lite, Inc.

By: */s/ Gordon E. Gray*

## ATTESTATION

Pursuant to LR 5-4.3.4(a)(2)(i), I, B. Scott Eidson, attest that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

By: */s/ B. Scott Eidson*
B. Scott Eidson

**IT IS ORDERED** that the forgoing Agreement is approved.

Dated: August 18, 2026

/s/ Autumn D. Spaeth
HONORABLE AUTUMN D. SPAETH
United States Magistrate Judge

**Exhibit A**
**Required Metadata Fields**

| FIELD | DESCRIPTION |
|---|---|
| BEGBATES | Identifies the Bates number of the beginning page of the Document. |
| ENDBATES | Identifies the Bates number of the last page of the Document. |
| BEGATTACH | Identifies the Bates number assigned to the first page of the parent Document in an email or edoc family. |
| ENDATTACH | Identifies the Bates number assigned to the last page of the last attachment in an email or edoc family. |
| RECORD TYPE | Description that represents the file type to the Windows Operating System. (Examples are Adobe Portable Document Format, Microsoft Word 97-2003 Document, etc). |
| CONFIDENTIALIT Y | Identifies the Confidentiality Designation (if any) assigned to the Document. |
| CUSTODIAN | The name of the person from whom the Document was originally collected and maintained by in the normal course of business. |
| ORIGINAL FILE EXTENSION | Identifies the original file extension of the natively collected file. |
| FILE NAME | The file name of the natively collected file. |
| FILE SIZE | Identifies the file size of the natively collected file. |
| FILE PATH | Identifies the original network or email folder path of the Document at the time of collection. |
| MD5HASH | MD5HASH value of the natively collected file. |
| DATE/TIME SENT | Identifies the date and time an email was sent (time zone in which the Electronic Records originated from or adjusted to UTC, 12 hour format). |
| DATE/TIME RECEIVED | Identifies the date and time an email was received (time zone in which the Electronic Records originated from or adjusted to UTC, 12 hour format). |
| FROM | Identifies the sender of an email. |
| TO | Identifies all recipients of an email. |
| CC | Identifies all individuals copied on an email. |
| BCC | Identifies all individuals blind copied on an email. |
| EMAIL SUBJECT | Identifies the subject line of an email. |
| DATE/TIME MODIFIED | Identifies the date and time a natively collected file was last modified (time zone in which the Electronic Records originated from or adjusted to UTC, 12 hour format). |
| AUTHOR | Name of the original author of an Electronic Document. |
| LAST SAVED BY | The name of the person who last saved an Electronic Document. |
| DOCUMENT TITLE | Content of "Title" Metadata field of an edoc (if present). |
| DOCUMENT SUBJECT | Content of "Subject" Metadata field of an edoc (if present). |

| | |
|---|---|
| TEXT PATH | Contains the path to the Document level .TXT file containing the full extracted or OCR text of a produced Document. |
| NATIVE PATH | Path to a natively produced file (if applicable). |
| SOURCE PATH | Folder structure and path to the location of the Electronic Document at the time it was collected. |
| ALL CUSTODIANS | The names of all custodians from whom the Electronic Record was originally collected (master and deduped). |
| HAS REDACTIONS | The yes/no indicator of whether a produced Document was redacted. |
| ALL SOURCE PATHS | Identifies the folder structures and paths to all locations from which copies of an Electronic Document were collected (time zone in which the Electronic Records originated from or adjusted to UTC, 12 hour format). |